Today is 2016-1318 Capital Dynamics v. Cambridge Associates Okay, Mr. Bannon, please proceed May it please the Court, this is an appeal from a final decision of the PTAB and the appeal primarily focuses on Step 2 of the Section 101. It's undisputed in this case that the claims or the claimed invention in the 196 patent solved a significant problem in the private equity industry in the early 2000s and also that the inventors were lauded for their contributions. It's also significant in this case, I think, that the board that found a violation or rather the fact that the invention wasn't patent eligible under Section 101 also addressed Pelley's claims of obviousness under Section 103 and found that the claimed invention did have limitations that defeated the obviousness claim. Can I ask you this question, which I guess actually goes to both of the things that you said about this solving a significant problem in the financial equity industry and the potential relationship between a 103 inquiry and a 101 inquiry. I don't know if this is a good form of the question, but I'm not sure I'm remembering this quite right, but the Black-Scholes theorem solved a significant problem in the financial industry, essentially pure mathematics. You probably would find it non-obvious if you counted everything that was new and didn't appear in prior art, but you would say that's actually not patentable because it's not the right kind of innovation. Why isn't this case that? Sorry, I'm not familiar with the case that you're referring to. Black-Scholes theorem is about valuing the options and things. There's a whole world of, I guess, what's called financial engineering, which is essentially mathematics. Lots of innovative stuff. People make gazillions of dollars in Wall Street if they're really sophisticated about it. None of it matters if the only innovation is the mathematics. Let's generously call what's going on here the mathematics. My understanding, Your Honor, is that any process, method, et cetera, is patentable under Section 101 with a few exceptions, one of which is- They may be small in number, but they're not so small in size. I've seen two cases here already, Your Honor, on this. At any rate, in our particular case, it's a process that solved a problem, which in fact was the subject of a patent before, the Long 407 patent. I think actually in this industry, the financial, at least the equity industry, companies were not going after patents probably until State Street came along. Then at some point after that, they did try and start patenting business methods. Bilski confirmed that business methods could be patentable. At least they could be patentable. That's all one that it thought was. I guess that may be the case. At any rate, my understanding is that this court as well has also taken the position that business methods could be patentable. In this particular case- I guess I'm speaking for myself. It has seemed to me that that can easily be understood. I'm not sure if this was the intent in a way that depends on the breadth of the phrase business method. If I have a method for doing something that helps me engage in business, it might actually be focused on some technological component and you might still call it a business method. The Supreme Court said in Bilski, there's no category that we're prepared to call business method that we think the statute excludes. In significant part because there is a provision added to the statute at some point that seemed to confirm that at least something under the heading of business method was included. That doesn't mean that if a particular kind of business method in which all the innovation is essentially mathematics or maybe even essentially the entering into legal obligations that those wouldn't be independently ineligible under what then became Alice basically. As far as the Alice Mayo test goes, we're looking at a two-step test. Identify the abstract idea and then is there an inventive concept beyond that. Obviously these terms have not been well-defined and they're... If your invention is math, even if it's a new formula or new implementation or the like, isn't that per se an abstract idea? I think that in Deere, there was mathematics involved but it was applied to a process. Deere was math applied to a process. Here I would argue or I am arguing that the process is the... Isn't the process you're talking about here inherently part of the math? Isn't it the solution to the math problem? I think of your... Deere is we came up with a new formula that will help the rubber curing process. You're still going to put rubber in the machine. You're still going to heat it. It's now, this is going to... We came up with a formula that will determine the exact timing at the exact temperature that will perfectly cure the rubber. That is using math to improve a physical process but what your case feels more like and I know it's more complicated than this and your scaling function is more complicated than this but I'm not particularly good at investments and on top of it, as a judge, I can't invest in many stocks and stuff so we're stuck with like mutual funds. Well, my husband found this great article that said, buy Vanguard, they're the cheapest in terms of their cost and just divide your assets 40, 30, 30 in these three overall mutual fund categories and if you maintain 40, 30, 30 at the end of each year, if one's gone up, you reevaluate, you switch them, it's almost like your scaling function, right? It's like this is the asset distribution that will potentially result in the greatest value. Now I'm being unfair to my husband because his formula was actually tremendously more complicated than that but it was so complicated I ceased to listen as he was talking about it. So all I got out of it was some 40, 30, 30 concept and that's the novelty. The novelty of what he did is he came up with this idea of this percentage of this, this percentage of this and this percentage of this and he thinks that would bring us the greatest overall value with the least risk. Why isn't that exactly what you're claiming except more complicated formula for sure. Your formula is unique, your scaling function, which is a formula, is unique but you're just using it for valuation in the same way, a financial cash flow process. The scaling function actually is not the invention. It's the application of the scaling function to the cash flows of the private equity investment. You want to compare the private equity investment to an index like the S&P 500. It's much more complicated and possibly much more successful financial strategy than what I suggested. I tried to make mine as simple as possible in my example quite frankly but how is that patent eligible? It's just a formula for investing. I look at it as a process actually and I'm using the term process. Mine was a process too. At the end of each year we're supposed to reevaluate and reallocate the funds so that they maintain the 30, 40, 40 balance or whatever it is. So technically it's a process. It's an iterative process done at the end of every year. Ten years ago these were perfectly patent eligible claims. We're just not there. I don't know that that's changed, Your Honor. I think patent methods, and again not a lot has been defined in this area, but I think patent methods or processes that particularly are used in connection with the computer are patentable. Only if they improve the functioning of the computer. This doesn't do that. All this does is use a computer to take financial data as an input, apply a particular formula to it, and then determine a value. It seems to be entirely about the information manipulation. Gathering data, making calculations, comparing a couple of things, and getting useful information out of it. Why is that not essentially all on the mathematics side of the line, or at least the information side of it? Well, Your Honor... So it may be quite innovative, but it's innovative in the wrong realm. Right. Well, if we want to promote innovation, I think... You understand what I mean by wrong. I mean under case law, right? Right, I do. Well, at any rate, Your Honor, I think the idea here, at least under the patent system, is to promote innovation. These are novel and new techniques that should qualify as a process. That's our argument, basically. What can we do with that argument? I mean, that argument may have been good before Bilski and Ellis and about a dozen cases from this court, but it's very clear that these kind of business methods that don't actually do anything beyond manipulate numbers or create legal obligations aren't patent eligible anymore. I mean, if that's your argument, then you probably need to go down the street to Congress, not to us. Right. Well, the application of the test looks at whether there's an abstract idea, and it's a two-part test, not just a one-part test. The test isn't just whether the idea is abstract or the claims are abstract. So we have basically not appealed the first part of that test, and we're focusing on the inventive concept. And the issue in the second part of the test is, is there an inventive concept? And we believe there is, for various reasons. But isn't it an abstract inventive concept? I mean, just describing it as inventive doesn't mean it's eligible if it's still an abstract inventive concept. Right. It's a method, Your Honor, scaling the cash flows. It is performed on a computer. I know in Enfish, just recently, this court talked about the fact that a general-purpose computer doesn't doom the claims. I think that's not anywhere close to what Enfish said. Okay. Well, you were citing some case law, actually. That wasn't the whole thing. Enfish is entirely distinguishable, because Enfish was an invention that actually improved the functioning of the computer itself, not some abstract idea done on a computer. The fact that you do this on a computer does nothing to help you save your claims, based upon at least the last three or four years of our precedent. Well, Your Honor, again, I think a specific application of the two-part test would establish that there's an inventive concept here. Okay. Mr. Bannon, you wanted to save some rebuttal time. So why don't we turn the podium over to opposing counsel, Ms. Wendlandt. I said it right? Oh, good. I'm like one for six today. So go ahead. May it please the court. The 196 patent addresses a mathematical problem, the negative NAV problem. And all it does is provide for patenting a mathematical solution. It is pure math. I would submit that even before Bilski, this was not patent eligible. In fact, there's no distinction between this case and Parker v. Fluke, the case in 1978 where Justice Stevens said, a new mathematical algorithm, no matter how novel, for updating alarm limits, used to actually adjust the alarm limits, is still not patent eligible. It's math. That's all that we have here. I'd like to use my time and oral argument to address three arguments that appellants make. The first one is that because the board found that the patent claims were eligible under 103, that they therefore erred by concluding that they weren't patent eligible under 101. Now, as this panel knows, groundbreaking discovery, innovation, things like cleaving the breast cancer gene or cell-free fetal DNA to use in prenatal exams, all of those were novel discoveries, but they weren't patent eligible because they go to those three things, those limited three things that are not eligible under patents. The argument that the board found that this patent was not obvious in light of the long patent, and therefore it erred, is not a novel argument. It's been an argument that has been made and rejected, most recently by the Supreme Court in Mayo, when the government said, don't decide this case on 101, decide it on 102, 103. The Supreme Court said, we declined that invitation because it would make 101 a dead letter. The second argument made by appellants is that the board was mistaken because it didn't apply a complete preemption test. Here we know, again, that that is not a novel argument. That argument was made in Bilski, where hedging was limited to the energy markets, and the in Mayo, it was a narrow preemption of a correlation between efficacy and toxicity and metabolites. That was said to be a narrow preemption, and therefore not completely preempting the idea. Again, the Supreme Court said no. Then in Fluke, again, in 1978, Justice Stevens said, it's just this one mathematical equation. Not all mathematical equations for updating alarm limits are precluded, and in that case, the court rejected it. Most recently, this court in BiSAFE and OIP in Ariosa said, complete preemption may be a sign that 101 is implicated, but it's not required. Then finally, appellants say that the PTAB decision was arbitrary and capricious. I think that maybe they dropped that allegation in their grave reef, couldn't tell, but it's clear to me, and it's clear from the record, that the board considered the arguments made by the petitioner, by Cambridge, and that this was pure math. I consider the actual claims at issue, which are, for example, claim one, that just is three data gathering steps plus the math, and then it asked an oral argument before the board on May 5th last year, what besides the math is new? There was no response that was credible. It was just a new method. Well, frankly, after the current 101 case law, and since Fluke, there has been paradigmatically, I would say, quintessentially, math is one of those examples that is just not patent eligible, no matter how groundbreaking it is, and that's just an assumption here. All that appellants claim is that not the... Such as to be utterly useless in any realm outside a practical realm like the financial industry. That's correct. The math is just one of those things that the Supreme Court has said is not patent eligible, even if you marry it to a computer, even if you marry it to data gathering steps. It's just not enough, and you need not look any further than the Parker v. Fluke. If there are no questions from the panel, I'll rest on the papers. Thank you. Mr. Bannon? Mr. Bannon, you have some rebuttal time left. Your Honor, just on the issue of preemption, the Supreme Court has historically always stressed the preemption issue as being very significant, and in fact, a number of cases in Bascom just recently have been distinguished on that ground. With regard to the board, there was a substantial amount of evidence that was in the record regarding various techniques that could be used. It would have been helpful, I think, that if the board considered the preemption issue, it would have found that there was no preemption here. Also, there's a policy argument here relating to the expanded use of Section 101. As you all, I'm sure, are aware, Judge Newman in Bascom just recently suggested that Section 102, 103, and 112 should really control the 101 issue. Former Patent Commissioner Kappos has written articles saying that he thinks that Section 101 should be just abandoned totally. Now, it may be that that's an issue for Congress, Your Honor, but I think that an expanded view of Section 101 would be appropriate in order to innovate, provide innovation in the industries. Okay, Mr. Bannon, I think we have your argument. I thank both counsel. The case is taken under submission. All rise. The Honorable Court is adjourned until tomorrow morning. It's at o'clock a.m. Thank you.